BUFFALO LOAN, TRUST AND SAFE DEPOSIT COMPANY, as Administrator with the Will Annexed of DOROTHEA LEONARD, Deceased, Respondent, v. JOHN LEONARD, Appellant, Impleaded with BUFFALO LOAN, TRUST AND SAFE DEPOSIT COMPANY, as Guardian, etc.

1. GUARDIAN AND WARD — RESIDUARY AND SPECIFIC LEGATEES — ACTION — PARTIES. When, in an action brought by an administrator with the will annexed to recover from the residuary legatee moneys prematurely paid to him by a former executor, the plaintiff is made a party defendant in the capacity of guardian of the estate of an infant specific legatee, whose unpaid legacy constitutes the only claim against the testator's estate, the action is in effect the same as though the demand was at the suit of the infant, through his guardian, against the residuary legatee.

2. GUARDIAN'S NEGLIGENCE. It seems, that in an action in which an infant, through his guardian, seeks to recover the amount of a legacy

from the residuary legatee, to whom the executor had prematurely paid over funds of the estate, the infant cannot be deprived of his remedy by the neglect of the guardian to reduce the legacy to possession when he might have done so.

3. PASSIVITY OF GUARDIAN NOT A DEFENSE TO RESIDUARY LEGATEE. The fact that a guardian remained passive for four years, without instituting proceedings to compel an executor to account and pay over a legacy of the ward's, when the estate was known to be amply sufficient for the payments required by the will and the executor was believed to be solvent, does not constitute a defense to the residuary legatee in an action to compel him to refund to the ward moneys prematurely received from the executor.

4. RESIDUARY AND SPECIFIC LEGATEES — LIABILITY FOR PREMATURE PAYMENT BY EXECUTOR. If a residuary legatee receives moneys of the estate from the executor without any warrant in law or any judicial settlement of accounts, he takes with all the risks attending such a premature payment; and, on the subsequent insolvency of, and devastavit by, the executor, can be compelled to refund, by the legatee of a specific money legacy which had not been paid or provided for by the executor.

5. LIABILITY OF RESIDUARY LEGATEE. If a residuary legatee, in the absence of a judicial settlement of the accounts of the executor, receives from the executor a voluntary payment of moneys of the estate, when, as matter of fact, a legacy has not been paid or provided for, he subjects himself to the same liability to refund as would exist if he were shown to have received the money with knowledge that the legacy had not been paid or provided for.

*Buffalo Loan & Trust Co.* v. *Leonard.* 9 App. Div. 384, affirmed.

(Argued October 8, 1897; decided October 19, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 27, 1896, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George W. Cothran* for appellant. The guardian having assented to the funds remaining in the hands of the executor, without security, and receiving payments of interest thereon, assumed the responsibility of making good to its wards the sums of money that were lost by reason of the devastavit of the executor, as it was solely by reason of the culpable negli-

gence of the guardian, and in violation of its duty to reduce the estate of its wards to possession, that the loss occurred. (2 R. S. 150–153, §§ 3, 20, 21; *King* v. *Talbot*, 40 N. Y. 76; *Chapman* v. *Tibbits*, 33 N. Y. 289; *White* v. *Parker*, 8 Barb. 48; *Schultz* v. *Pulver*, 11 Wend. 363; *Harrington* v. *Keteltas*, 92 N. Y. 40; *O'Conner* v. *Gifford*, 117 N. Y. 275; *In re Hall*, 16 Misc. Rep. 174.)

*Wallace Thayer* for respondent. The administrator empowered by the law to represent the estate does not take the burden of the malfeasance or misfeasance of the preceding executor, appointed by the same law, to care for that estate, who has been false to his trust. It is only successors in interest who are thus bound by the acts of their predecessors in interest; not successors in trusteeships; there is no such privity between them. (*Harrington* v. *Keteltas*, 92 N. Y. 40.) The negligence of the guardian, if there were any, would not affect whatever rights the infants may have. (*Gilbert* v. *Taylor*, 76 Hun, 92; 148 N. Y. 298; *Mills* v. *Smith*, 141 N. Y. 256; *Collin* v. *Wilcox*, 47 N. Y. S. R. 917; 13 Am. & Eng. Ency. of Law, 132.)

GRAY, J. The plaintiff, as administrator with the will annexed of the estate of Dorothea Leonard, deceased, brought this action to recover of the defendant, John Leonard, moneys which had been prematurely paid to him, as residuary legatee, by a former executor of the estate.

By Mrs. Leonard's will she gave certain pecuniary legacies, among others, to Margaret and Herman Ruf. The remainder of her estate she gave to her husband, John Leonard, the defendant. The will was admitted to probate in May, 1890, and Louis K. Purviance was appointed sole executor. At that time, Margaret and Herman Ruf were infants and this plaintiff was appointed the guardian of their estate. The executor received into his possession moneys to an amount more than sufficient to pay the specific legacies and to leave a surplus greater than was in fact received by the defendant Leonard. But when, in November, 1894, by a decree of the Erie

County Surrogate's Court, in proceedings instituted by Leonard to compel Purviance, as executor, to account for and to pay over the moneys received by him, he was required to pay to the guardian of said infants the sum of $3,606, in full for their legacies, he was discovered to be insolvent and he absconded.   Prior to that time, however, he had paid to the defendant Leonard, as residuary legatee, the sum of over $5,000; but this was done without the authority or decree of any court.

It was found below that Purviance was financially responsible from the time of his appointment up to about the time when the surrogate's decree was obtained against him.   After Purviance had made default and had absconded, his letters were revoked and this plaintiff was appointed administrator with the will annexed.   It thereupon commenced this action against the defendant Leonard alone; but, subsequently, the guardian of the infant legatees was brought in as a party defendant.   Thus the trust company is both plaintiff, as administrator, and a defendant, as the infants' guardian.   This procedure was deemed advisable, in order that the questions raised by Leonard in his defense might be more effectually disposed of.   That defense was that the legacies sought to be recovered in this action were lost, solely, by the carelessness, negligence and inattention to duty of the guardian of the infants; in not taking proper steps to reduce their estates to possession and to see that they were properly invested.   It is Leonard's claim that the loss should fall upon the guardian and not upon the residuary legatee.

The action, in the aspect which it assumed, upon the bringing in of the infants' guardian as a party defendant, was the same, (there being no claims against the estate except those of the infants), as though the demand was at the suit of the infants, through their guardian, against the residuary legatee. It is not disputed that, as between such a legatee and the residuary legatee, the former is entitled to receive his legacy in full before the latter is entitled to anything; but it is argued that the conduct of this guardian was such, with

respect to the estate, as to render it legally responsible to its wards for the moneys due by the executor and that, as between it and the residuary legatee, the loss, occurring through the executor's misconduct, should fall upon the former. If the facts justified this charge of neglect as to the guardian's conduct, I should, still, be unwilling to hold that, in consequence thereof, the infants had become deprived of their remedy of pursuing the moneys of the estate thus prematurely paid into the hands of the residuary legatee. It is they who, in effect, are suing through their guardian and the issue would have to be disposed of according to their rights, and without regard to failures or omissions on the part of their guardian. The guardian could not impair or destroy the vested rights of its wards. But the facts only justify the inference that, during the years which intervened between the executor's appointment and the time when he was called to account in the Surrogate's Court, the guardian had remained passive. The estate was known to be amply sufficient for the payments required by the will; it was in the hands of the person selected by the testatrix to execute her testamentary intentions, and he was known, or believed, to be solvent. While the guardian would have had the right to institute proceedings for an accounting, and to compel the payment to it of the infants' legacies, the neglect to do so cannot be said to have been culpable in degree. Nor does it lie in the mouth of the residuary legatee to set up any such claim. He knew that nothing specific was given to him, but only that which remained of the estate after the debts and legacies had been paid. It behooved him, more especially, to have the estate settled up and the residue judicially ascertained. If he chose to demand and receive moneys from the executor, without any warrant in the law, or any judicial settlement of his accounts, he took them with all the risks attending such a premature payment. Where the question arises between general or specific legatees, and the endeavor is to compel a refunding on the part of one who has been paid his legacy, its solution depends upon considerations

which are not applicable to a case where the funds are pursued into the hands of a residuary legatee. If a legatee has been successful in getting his legacy paid to him, and the estate in the executor's hands was sufficient to pay all legacies at the time, a subsequent devastavit by the executor, through which there occurs a deficiency of assets wherewith to pay the other legatees, will not justify an action to compel a refunding by the legatee who has received his legacy. That would be because the payment itself to the legatee was not a devastavit and because the law would throw its protection around the more diligent legatee. (Roper on Legacies, *460; *Lupton* v. *Lupton*, 2 John. Ch. 626, 627.) Such a right to compel a refunding would only exist in a case where the assets were not sufficient to pay all the legacies at the time of the payment to the particular legatee. Where the case is between a general legatee and the residuary legatee, I can imagine of no defense to the latter's liability to refund in case of a premature payment of moneys, where the former is without fault in the matter, and I certainly know of no rule which would impute to an infant legatee the fault of his guardian. The residuary legatee is entitled to nothing, until all the debts and other legacies are paid. Of course, there might be a case, where he had been paid by the executor in good faith and when apparently entitled to the payment, and then no subsequent insolvency of the executor, resulting in the loss of a fund set apart and held for a legatee, would create a liability to refund. Such a case was *Walcott* v. *Hall*, (2 Brown, Ch. 305), where the executor had set apart, under the testamentary provision, a legacy given to an infant, payable when he became of age, and had then paid the surplus of the testator's estate to the residuary legatees. He became insolvent, before paying over the legacy, and it was held that the residuary legatees would not be compelled to refund; for they had only received what they were entitled to. So in *Mills* v. *Smith* (141 N. Y. 256), where a sum of money was given in trust to the executors to apply the income for the use of the testator's son during

his life, with the direction upon his death to pay over to his children, and upon the death of the beneficiary the executor was insolvent and unable to pay over the fund, it was sought, upon various grounds, to recover from the residuary legatees under the will.   We held that the responsibility for the subsequent default of the executors, as trustees for the plaintiff's father, could not be fastened upon the residuary legatees.   It was observed in that case, with respect to residuary legatees, that, " they are liable to refund in a case where, having been paid from the estate, it is discovered that there is a deficiency of assets for distribution under the will, caused by the diminution of the estate through the premature payment of legacies."

In the present case, for the defendant Leonard, in the absence of a judicial settlement of the accounts of the executor, to have received a voluntary payment of moneys, was to subject himself to the same liability to refund, as would exist if it was shown that he received the money with knowledge that the other legacies had not been paid, or provided for. (*Stephenson* v. *Axson,* 1 Bailey Eq. [S. C.] 274.)

I think the judgment appealed from was right and that it should be affirmed, with costs.

All concur.

Judgment affirmed.