## In re SMITH.

(Supreme Court, Appellate Division, Second Department.  December 19, 1899.)·

EXECUTORS—PAYMENT OF LEGACIES—RESIDUARY ESTATE.

 A testator appointed his wife and one R. executors of his estate.  Both qualified, but only the wife, up to the time of her death, had the management of the estate.  The will gave to his wife the income of a certain sum during her life, and on her death directed that the principal go to certain legatees.  It also gave other legatees the income of other sums for life.  The residue of the estate he bequeathed to his wife.  She invested a sum sufficient to pay the various legacies, and appropriated the residue.  On her death her executor turned over to her co-executor of her husband's estate the securities representing the fund so invested.  The co-executor embezzled a part thereof.  *Held*, the estate of the wife is not liable for the amount of such defalcation.

Appeal from surrogate's court, Kings county.

Petition by Ada L. Johnson and another to compel Daniel H. Smith, as the executor of the estate of Sarah H. Combes, to render an account of her proceedings as executrix of the estate of Hiram G. Combes.  The right to an accounting was denied by a referee, and from the decision of the surrogate confirming the report of the referee the petitioners appeal.  Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

E. H. Hanford, for appellants.

T. Ellett Hodgskin (George W. Wingate, on the brief), for respondent.

WOODWARD, J.  Hiram G. Combes died March 18, 1889, leaving a last will and testament, in which he appointed Sarah Marion Combes and Edward M. Reid executors.  Both of these executors qualified, but up to the time of her death Mrs. Combes had the exclusive management of the estate.  Mr. Combes, besides making numerous specific bequests, gave to Mrs. Combes the income of $30,000 during her lifetime, and directed that on her death this should be divided among certain charitable institutions.  He also gave Lydia W. Harris the income of $5,000, and his brothers and sisters the income on $8,000 during their lifetime, and the remainder of the estate was bequeathed to Mrs. Combes as residuary legatee.  Mrs. Combes paid all of the specific legacies, but under the terms of the will there remained $43,000, which could not. be distributed until the death of the life·tenants.  Mrs. Combes paid herself the income on $30,000, and she paid the income of $5,000 to Lydia W. Harris up to the time of her death, and also the income of $8,000 to the brothers and sisters of her husband up to within one year of her death.  She set apart $43,000, this being the.sum which could not, under the will, be paid during the· life of the life tenants; and the income, up to the time of her death. was distributed in the manner directed by the will.  This $43,000 was invested in specific bonds and mortgages, the most of which had been held by her husband during his lifetime, and the others were investments and reinvestments made by her.  Having made this provision for paying the legacies, obviously in harmony with the letter

and spirit of the will, Mrs. Combes paid to herself, as residuary legatee, the remainder of the estate. She died in March, 1891, leaving a last will and testament, in which Daniel H. Smith was named as her executor, and letters testamentary were issued to him in June, 1891. There was no time during the life of Mrs. Combes that she could have distributed the estate, and finally accounted therefor, because of the fact that the legacies were not payable, and at the time of her death the law made no provision for a voluntary accounting of Mr. Smith as her executor. Under these circumstances Mr. Smith, as the executor of Mrs. Combes, handed over to Edward M. Reid, the surviving executor of Hiram G. Combes, the securities which Mrs. Combes had set aside for the benefit of the legatees mentioned above, and the proceeds of such as he had collected, and paid the interest which had been collected. The amount turned over aggregated $43,800 principal and $428.25 of income, which was more than enough to meet all outstanding legacies, debts, and reasonable expenses of the administration of the estate of Hiram G. Combes; and this, it is admitted, is all that the surviving executor had a right to demand of the executor of his co-executor. In January, 1897, a proceeding was instituted to compel Reid to account, in which the appellants now before this court, as well as the respondent, were parties, and the referee decided as a matter of fact that Smith, as executor of Mrs. Combes, had turned over to her co-executor, Reid, more than sufficient money to meet the amounts due to the legatees under the will of Mr. Combes; but it also appeared, as a result of this accounting, that Reid, some time before 1896, had appropriated to his own use something over $18,000 of the estate. Having failed to realize upon their legacies under the former proceeding, two of the legatees under the will of Mr. Combes, whose money had been embezzled by Reid, filed a petition in the surrogate's court of Kings county on January 5, 1898, to compel Daniel H. Smith, as executor of Sarah H. Combes, to render an account of her proceedings as executrix of Hiram G. Combes, deceased, in pursuance of the provisions of section 2606 of the Code of Civil Procedure. As a result of this proceeding, Mr. Smith was directed to account, and subsequently he submitted his account, to which the petitioners filed objections, and the parties stipulated that it be referred to Charles H. Otis "to take and state said account, and to hear and determine any and all issues raised thereto by said objections." Upon the hearing the referee held that the petitioners were not entitled to an accounting, and his report, after being objected to by the petitioners, who made a motion to set aside the report, was confirmed by the surrogate, and from that decision appeal comes to this court.

The important question thus presented is whether the petitioners can reach the residuary estate, the surviving executor having embezzled the funds, or a portion of them, designed for the payment of their legacies. There is no doubt that a residuary legatee does not gain a good title to property until all of the charges against the estate are paid or provided for. There can be no residue until the debts and other charges against the estate have been met; but the law does not require that all legacies shall in fact be paid before the

residuary estate may be determined and be turned over to the legatee. It is satisfied when an adequate provision, in good faith, has been made for meeting all of the charges. As was said in the case of Mills v. Smith, 141 N. Y. 256, 36 N. E. 178: "The question in which the plaintiff was interested concerned the trust fund, and when that is found to have been set apart and held by the executors out of the estate it is no concern of his how the distribution was made of the rest of the estate to the residuary legatees;" and while it is true that in the case cited there had been a judicial settlement of the account it was conceded that the plaintiff was not within the jurisdiction of the court, and as to his interests the matter stood in exactly the same light as though there had been no accounting, as in the present case. In the case at bar the will practically constituted a trust fund for the payment of certain annuities during the lives of the persons mentioned, which fund was to be distributed upon the deaths of the several beneficiaries. This fund was held by Mrs. Combes during her lifetime, the payments being made as they became due, and upon her death her executor turned this fund over to her co-executor. This fund had been ascertained and set apart for the purpose of meeting the legacies as they fell due. It was more than enough to accomplish the end, and, all of the specific legacies which became due presently, as well as all of the other charges against the estate having been paid, the residuary estate vested in Mrs. Combes, and upon her death became a part of her estate, which cannot be reached for the purpose of making good the amount embezzled by her co-executor. Such was the doctrine asserted in Walcott v. Hall, 2 Brown, Ch. 305, cited with approval in Trust Co. v. Leonard, 154 N. Y. 141, 146, 47 N. E. 966, 967, where it is said, in qualification of the statement that the residuary legatee is entitled to nothing until all the debts and other legacies are paid: "Of course, there might be a case, where he [the residuary legatee] had been paid by the executor in good faith, and when apparently entitled to the payment, and then no subsequent insolvency of the executor, resulting in the loss of a fund set apart and held for a legatee, would create a liability to refund." The learned referee found this state of facts to exist in the case at bar, and the attention of the court is not directed to any authority which would justify holding the estate of Mrs. Combes for the embezzlement of her co-executor, a fund for the purpose of meeting all of the legacies having been set aside and delivered into the hands of the surviving executor. The residuary estate was that portion of the estate which remained after all the debts had been paid and provision had been made for meeting the payments under the legacies when they should become due and payable, and it vested in Mrs. Combes absolutely, and became a part of her estate, to be administered by her executor, who has no relation whatever to the controversy between the petitioners and the surviving executor of the estate of Hiram G. Combes. It was clearly never intended by the testator that his wife, the residuary legatee, should wait until the deaths of all of the life tenants before coming into possession of that portion of his estate which was in excess of an amount sufficient to carry out the provisions of the will. All of the purposes of the testator could be served by setting aside

a fund to meet the requirements of the legacies, and it is a universal rule that, when the purpose of a trust has been fully accomplished, the title or estate of the trustee is at an end, and, if he is entitled to the beneficial estate, the two estates meeting in the same person are merged, and he becomes vested in his own right with the entire interest in the property. Blood v. Kane, 130 N. Y. 514, 519, 29 N. E. 994, 15 L. R. A. 490. It is true, of course, that these legacies were not designated as trusts, but the spirit of the will required that a sum of $43,000 should be set aside, the interest on such sum to be distributed among certain designated individuals during their lifetime, the fund itself to be distributed among other legatees upon the deaths of the several persons mentioned. "Upon the payment of all debts, legacies, and charges against the estate," say the court in Re Mullon's Estate, 145 N. Y. 98, 104, 39 N. E. 821, 823, "the title to the remaining assets would at once vest in the residuary legatees under the will, without any formal transfer from themselves as administrators," and this is exactly what was done in the case at bar. The residuary estate having become vested in Mrs. Combes, and the funds set apart for the payment of the legacies having been placed in the hands of the surviving executor of the estate of Hiram G. Combes, the executor of Mrs. Combes' estate has no property of the former estate under his control, and he owes to the petitioners no duty to account. Their remedy is in a proceeding against the surviving executor, and the fact that he has embezzled a portion of the funds belonging to them does not charge the estate of Mrs. Combes with the deficiency.

The decree appealed from should be affirmed, with costs. All concur.